IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| WALTER H. CARTER, ) | |
| DEBRA K. CARTER, ) | Bankruptcy No. 11-00759 |
| ) | |
| Debtors. ) | |

**ORDER RE: DEBTORS' MOTION TO AVOID JUDICIAL LIEN**

This matter came before the Court at a hearing on Debtors' Motion to Avoid Judicial Lien. Nicholas Larson represented Debtors. Mark Walk represented creditor Estate of Leon Jerome Heimer. After hearing arguments, the Court requested post-hearing briefing and took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O).

**STATEMENT OF THE CASE**

The Estate of Leon Jerome Heimer (the "Estate") took action to enforce its judicial lien against Debtors. The Sheriff levied on Debtors' vehicle. The Estate then, as required by Iowa law, paid off the security interest on the vehicle held by St. Ansgar State Bank. Debtors filed for bankruptcy before the Sheriff's sale of the vehicle. Debtors moved to avoid the Estate's lien as a judicial lien under 11 U.S.C. § 522(f)(1)(A). The Estate resists, arguing that by paying the off the Bank's security

interest the Estate became more than just a judicial lien holder. The Estate argues it became subrogated to the Bank's rights as a secured creditor. Debtors argue that the Estate is not subrogated to the Bank's rights as a secured creditor and should be adjudged to have only a voidable judicial lien. For the following reasons, the Court rules in favor of the Estate.

## FINDINGS OF FACT

The facts in this case are undisputed. Debtor Debra K. Carter won a 2005 Cadillac Escalade. Debtors pledged the vehicle as collateral for two loans with the Bank. Both sets of loan documents included a promissory note and security agreement. The Bank perfected its security interest against the vehicle.

Debtors also held an open account with Jerome Heimer. After Mr. Heimer passed away, Mr. Heimer's Estate took action to collect on the open account. The Estate obtained a money judgment against Debtors in Iowa District Court for $30,230.74, plus costs. The District Court issued a writ of execution to the Sheriff of Mitchell County. The writ of execution ordered the Sheriff to sell Debtors' Escalade to satisfy the Estate's judgment. The Sheriff levied on the Escalade on March 15, 2011. The Sheriff scheduled the sale of the vehicle for May 6, 2011.

On March 24, 2011, the Estate paid off the Bank's security interest as required by Iowa law as part of the execution sale. The Estate paid $21,299.79, which satisfied Debtors' loans with the Bank. The Bank released its security interest on the certificate of title. On March 26, 2011, the Mitchell County Treasurer recorded the lien release on the certificate of title for the Escalade. Debtors were current on their loan payments to the Bank at that time.

Debtors filed bankruptcy on April 6, 2011. On Schedule C, they claimed $13,600.00 of the Escalade value exempt under Iowa Code § 627.6(9)(a). That section provides for the exemption of the "debtor's interest in one motor vehicle, not to exceed in value seven thousand dollars." Iowa Code § 626(9)(a). Debtors claimed a $400 exemption on a second vehicle of lesser value. No party objected to Debtors' exemption claims. As a result, the exemptions were allowed. 11 U.S.C. § 522(l). The vehicle continues to be held by the Sheriff.

## ARGUMENTS OF THE PARTIES

Debtors argue the Estate holds only a "judicial lien" as defined in § 101(36) against the vehicle, which Debtors move to avoid under § 522(f)(1)(A). Debtors argue the Estate is only an unsecured creditor that obtained a judicial lien. Debtors assert that, when the Sheriff levied on the vehicle and the Estate paid off the Bank's

first security interest, that act converted what was formerly a non-avoidable security interest into part of the Estate's judicial lien. Debtors also argue that even if the Estate had acquired a security interest, the Estate could not enforce the default provisions of the underlying security agreement because Debtors were current on their loan payments to the Bank. Debtors assert this situation is best treated as the Estate holding a judicial lien on the whole collateral obligation. Debtors assert that the judicial lien, as expanded to encompass the payoff amount for the Bank, can be avoided entirely under § 522(f).

The Estate asserts it acquired and is seeking to enforce the Bank's security interest, which cannot be avoided. The Estate acknowledges that it initially obtained only a judicial lien for the amount due on the open account. The Estate argues that once the Sheriff levied on the vehicle, the Estate was required by Iowa Code § 626.34 to pay the Bank's security interest in order to proceed with collection. When it paid off the Bank's loan, the Estate argues it became subrogated to all the rights associated with the Bank's security interest under Iowa Code § 626.37. The Estate claims it now holds two liens: a judicial lien and the Bank's consensual lien. The Estate concedes its original judicial lien can be avoided; however, the consensual lien for the balance of the Bank's loan the Estate paid off cannot be avoided. The Estate also argues that it would be inequitable to allow Debtors to

4

avoid an otherwise non-avoidable security interest because the Estate paid it off in attempting to collect against Debtors prepetition. Debtors would get a windfall of equity in the vehicle and the Estate would be out not only the money owed originally, but the much larger sum it paid off to collect property under Iowa law.

## CONCLUSIONS OF LAW

Debtors seek to avoid the Estate's lien under § 522(f)(1)(A). That section states in pertinent part:

> The debtor may **avoid the fixing of a lien on an interest of the debtor in property** to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, **if such lien is**--
> (A) **a judicial lien** . . . .

Id. (emphasis added).

"The Bankruptcy Code [under § 522(f)] allows debtors to avoid liens on certain property that Congress deemed 'necessary to give substance to the concept of a fresh start. This property is required for the maintenance, health and welfare of the debtor and his family, and avoids literal destitution.'" In re Cleaver, 407 B.R. 354, 356 (B.A.P. 8th Cir. 2009) (quoting Thorp Credit and Thrift Co. v. Pommerer (In re Pommerer), 10 B.R. 935, 946 (Bankr. D. Minn. 1981)). "Lien avoidance is a federal remedy to be interpreted by the federal courts." Cleaver, 407 B.R. at 357; see also

5

Owen v. Owen, 500 U.S. 305, 306 (1991) (same); Matter of Thompson, 750 F.2d 628, 630 (8th Cir. 1984) (same). The Supreme Court has stated that Congress enacted § 522(f)(1) as "a device to thwart creditors who, sensing an impending bankruptcy, rush to court to obtain a judgment to defeat the debtor's exemptions." Farrey v. Sanderfoot, 500 U.S. 291, 300 (1991).

Here, Debtors believe they can avoid the Estate's lien as a "judicial lien." 11 U.S.C. § 522(f)(1)(A). The Bankruptcy Code defines "judicial lien" as a "lien **obtained by** judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36) (emphasis added). This Court has held that it is "the origin of the creditor's interest rather than the means of enforcement that determines the nature of the lien. Just because the creditor resorts to the judicial process to enforce the lien, it does not mean the lien is a judicial lien." In re Winchester, No. 06-01185, 2007 WL 420391 at *2 (Bankr. N.D. Iowa Feb. 5, 2007) (quoting In re Vaughan, 311 B.R. 573, 583 (B.A.P. 10th Cir. 2004) (holding bank's security interest that bank reduced to judgment prepetition was not judicial lien but bank's lien could be avoided on piano dolly where bank held avoidable nonpossessory, nonpurchase-money security interest under § 522(f)(1)(B)); see also In re Worley, No. 96-10450, slip op. at 4 (Bankr. N.D. Iowa Dec. 10, 1996) (judgment on real estate mortgage does not convert the consensual mortgage lien

6

into a judgment lien avoidable under § 522(f)); In re Sinnard, 91 B.R. 850, 854 (Bankr. N.D. Iowa 1998) (same).

The precise issue here is whether the Estate assumed an interest other than a judicial lien when the Estate paid off the Bank's loan against Debtors' vehicle. If the Estate holds more than a judicial lien, Debtors may only avoid what was left of the judicial lien on the vehicle. The resolution of this issue depends on what rights the Estate acquired under Iowa law governing execution sales of personal property and how those rights interact with § 522(f).

1. **The Estate Acquired a Judicial Lien Through Execution on Personal Property to Enforce a Judgment**

There is no dispute that the Estate obtained a judicial lien after the Iowa District Court entered a money judgment in favor of the Estate. "Judgments or orders requiring the payment of money, or the delivery of the possession of property, are to be enforced by execution." Iowa Code § 626.1. At the time the Estate began to execute on the judgment, the Bank held a prior perfected security interest on the property (Escalade) upon which the Estate sought to collect. Under Iowa law, "personal property subject to a security interest may be taken on attachment or execution **subject to certain conditions**." Home Pride Foods of Iowa, Inc. v. Martin, 686 N.W.2d 1, 3 (Iowa 2004) (emphasis added). Those "conditions" are specified in Iowa Code § 626.34. One condition is that the execution creditor must

7

"pay up" the prior perfected security interest against the personal property subject to levy:

> Personal property subject to a security interest not exempt from execution may be taken on attachment or execution issued against the debtor, if the officer, or the attachment or execution creditor, **within ten days after such levy, shall pay to the secured party the amount of the secured debt and interest accrued,** or deposit the same with the clerk of the district court of the county from which the attachment or execution issued, for the use of the secured party, or secure the same as in this chapter provided.

Id. (emphasis added). The Iowa Code also specifies what rights the executing creditor acquires by paying off the secured party:

> When such sum is paid to the secured party or deposited with the clerk, **the attachment or execution creditor shall be <u>subrogated</u> to <u>all the rights</u> of such holder**, and the proceeds of the sale of the collateral shall be first applied to the discharge of such indebtedness and the costs incurred under the writ of attachment or execution.

Iowa Code § 626.37 (emphasis added). In sum, the executing creditor is "subrogated to" the secured party's rights.

The Iowa Supreme Court has defined "subrogation" as "substitution of another person in place of the creditor to whose rights he succeeds in relation to the debt." Fidelity & Deposit Co. of Maryland v. Bowen, 98 N.W. 897, 898 (Iowa 1904)

8

(Ladd, J.). "Subrogation, like contribution and indemnity, is a separate form of restitution" State ex rel. Palmer v. Unisys Corp., 637 N.W. 2d 142, 156 (Iowa 2001). (citing 1 Dan B. Dobbs, The Law of Remedies § 4.3(4), at 604, 608 (2d ed.1993)). Subrogation is the "substitution of one person for another; that is, one person is allowed to **stand in the shoes of another and assert that person's rights** against the defendant." 1 Dobbs, § 4.3, at 404. "Factually, the case arises because, for some justifiable reason, the subrogation plaintiff has paid a debt owed by the defendant." Id.

"The object of subrogation is to prevent injustice and rests on the principles of natural equity." Palmer, 637 N.W. 2d at 156.

> The doctrine is needed because a person who is secondarily liable would otherwise have no cause of action against the unjustly enriched party. Thus, the rationale for subrogation is bottomed on a sensitivity to the comparative equities involved. Where one person is more fundamentally liable for a debt which another person is obligated to pay, such a person shall not be enriched by escaping the obligation.

Id. (citations omitted). While the subrogation here is statutory, the case law addressing subrogation under common law helps to understand its purpose.

When the Estate paid off the Bank's loan on the vehicle as required by Iowa Code § 626.37, the Estate became "subrogated to all the rights of" the Bank. By operation of law the Estate "stepped into the shoes" of the Bank with respect to all

9

the rights the Bank held in Debtors' Escalade. Under Iowa law all of the Bank's rights associated with its security interest became available to the Estate.

The question then becomes whether the lien rights—which are now the Estate's rights—can be avoided. When the holder of a mortgage or other consensual lien obtains a judgment to foreclose on its own interest, it is well-established that a debtor cannot avoid that lien using § 522(f). Winchester, 2007 WL 420391 at *2; Worley, No. 96-10450, slip op. at 4; Sinnard, 91 B.R. at 854. Here, the issue is whether an unsecured creditor (the Estate) who has paid off a security interest is treated the same.

The Court believes such a creditor—like the Estate here—should be treated the same. The Estate succeeded to the Bank's rights under the security agreement with Debtors. As a result, the Estate functionally became a secured party to the extent of the Bank's security interest. The Estate essentially acquired a security interest in the vehicle. Debtors have no right to avoid such a security interest under § 522(f)(1). The fact the Estate obtained the Bank's rights through the process of enforcing a judicial lien did not convert the Bank's rights, which the Estate acquired, into a judicial lien. Winchester, 2007 WL 420391 at *2; Worley, No. 96-10450, slip op. at 4.

Debtors argue that this case is different because Debtors were not in default to the Bank. Debtors were, in fact, current on their loan payments to the Bank. Debtors assert that cases cited by the Estate involve only consensual liens that were in default. In that line of cases, Debtors argue, the consensual lienholder had simply used the judicial process to enforce the consensual lien. Debtors agree this would not convert the consensual lien into a judicial lien. Here, however, Debtors contend that there was no default; thus, the Estate (in the shoes of the Bank) never had the power to enforce the default provisions in the Bank's security agreement with Debtors. Instead, Debtors assert that a judicial lien creditor forced the consensual lien relationship to end by its own action. In effect, Debtors contend the consensual lien relationship became subsumed by the judicial lienholder and transformed this into a judicial lien relationship.

While this argument has some appeal given the somewhat unique facts presented, Debtors provide no authority to support it. In fact, on closer inspection, the argument appears to contradict the intent of the authority involved. The argument does not account for the fact that Iowa Code § 626.34 requires a judgment creditor to pay off a security interest to enforce its judicial lien as to the collateral. The argument similarly fails to address the effect of Iowa Code § 626.37 which expressly grants the Bank's rights as a secured creditor to the Estate. The language

11

of § 626.37 also specifically contemplates "a sale of the collateral" and directs that the proceeds of the sale "shall be first applied to the discharge of such [secured party's] indebtedness . . ." In other words, the statutory language here allows for what the Estate seeks to do.

Debtors' argument also does not account for the windfall that Debtors would receive by being freed of a substantial debt and security interest on their property. The common law principles underlying subrogation are intended to prevent this type of unjust enrichment. Palmer, 637 N.W. 2d at 156 ("[T]he doctrine [of subrogation] is needed because a person who is secondarily liable would otherwise have no cause of action against the unjustly enriched party.").

Debtors' argument here is really more of a complaint that the Estate should not be able to force a sale of the vehicle when the underlying obligation the Estate is relying upon is not in default. Debtors' argument is not a lien avoidance issue; it may deal with the proper nature of the Estate's remedy, but that issue is not before the Court.

The Court's holding is also consistent with the other statutory language involved here. A "debtor's interest" in a motor vehicle is exempt. Iowa Code § 627.6(9). In this case, before the Estate levied on the vehicle, the Bank held a security interest in the vehicle. The "debtor's interest" in the vehicle was only the

12

value beyond that of the Bank's security interest. The fact that the Estate "stepped into the shoes" of the Bank did not create a larger exempt "interest" in the vehicle for the Debtors. In other words, Debtors never possessed that particular interest in the vehicle, and thus could not claim an exemption in it—or seek to avoid a lien that impaired it. The Estate's actions in no way diminished the exemption Debtors rightfully had.

For similar reasons, the Court's holding is also consistent with the Bankruptcy Code's lien avoidance language. Section 522(f)(1) allows a debtor to avoid "the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled" if such lien is a judicial lien. 11 U.S.C. § 522(f)(1)(A). Again, Debtors would not have been entitled to claim a motor vehicle exemption in the value of the Bank's security interest against the vehicle. When the Estate paid off the Bank's loan, the Estate simply assumed the Bank's position. This did not impair an exemption in the vehicle to which Debtors would have been entitled. The only portion of the Debtors' vehicle exemption that was impaired at all was Debtors' remaining equity in the vehicle beyond the amount covered by the Bank's security interest. That portion of the vehicle equity—and Debtors' right to exempt it—was impaired only by the judicial

13

lien resulting from the judgment in Iowa District Court. The Estate has conceded the judicial lien covering that amount can properly be avoided.

The holding also comports with the purpose of § 522(f)(1). The Supreme Court has said that the purpose of § 522(f) is to "thwart creditors who, sensing an impending bankruptcy, rush to court to obtain a judgment to defeat the debtor's exemptions." Farrey, 500 U.S. at 300. As discussed above, Debtors could not have claimed an exemption in the vehicle to the extent of the Bank's interest. The Estate did not "defeat the debtor's exemptions" when it was subrogated to the Bank's rights as to its security interest. The Court's decision denying lien avoidance on the portion of the lien the Estate acquired from the Bank comports with and is supported by the language and purpose of all statutes involved here.

**WHEREFORE,** Debtors' Motion to Avoid the $21,299.79 Lien the Estate acquired from the Bank is DENIED. Debtors' Motion is GRANTED to the extent that the Estate's judicial lien fixed on the Debtors' remaining interest in the vehicle.

Dated and entered: October 26, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE